UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ROBERT CARROLL,

                        Plaintiff,

v.                                                                    1:19-CV-1230
                                                                      (GTS/DJS)

THE UNITED STATES OF AMERICA,

                        Defendant.

_____

APPEARANCES:                                              OF COUNSEL:

ROBERT CARROL
    Plaintiff, *Pro Se*
P.O. BOX 201
Connelly, NY 12417

HON. GRANT C. JAQUITH                              KAREN F. LESPERANCE, ESQ.
United States Attorney for the N.D.N.Y.           Assistant U.S. Attorney
    Counsel for Defendant
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY 12207-2924

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

          Currently before the Court, in this action under the Federal Tort Claims Act ("FTCA"),

28 U.S.C. §§ 2671, filed by Robert Carroll ("Plaintiff") against the United States of America

("Defendant"), are the following two motions: (1) Plaintiff's motion for preliminary injunction,

directing the Veteran's Administration ("VA") to grant his application for disability benefits

pursuant to 35 U.S.C. § 1151; and (2) Defendant's motion to dismiss Plaintiff's Complaint for

failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 3, 20.)   For the reasons

set forth below, Plaintiff's motion is denied, and Defendant's motion is granted in part and denied in part.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges that, between approximately January of 1991 and May of 2019, at the Castle Point VA Medical Center in Wappingers Falls, New York, and the Stratton VA Medical Center in Albany, New York, Defendant breached its duty of care as a medical provider by negligently retaining inadequate staff who failed to properly or timely diagnose Plaintiff's tandem spondylosis and instead attributed post-operative symptoms solely to cervical myelopathy, without considering alternate causes.   (*See generally* Dkt. No. 1, at 7 [Plf.'s Compl.].)   Plaintiff further alleges that, as a direct and proximate result of that breach, he has endured pain, suffering, mental anguish and other consequential damages, and will continue to endure the same in the future.   (*Id*. at ¶ 35.)   Based on these allegations, Plaintiff asserts claims of medical malpractice, negligence, and vicarious liability against Defendant.   (*Id*. at ¶¶ 25, 34, 41.)   Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.   (*Id*.)

### B.      Parties' Briefing on Plaintiff's Motion for Preliminary Injunction

In his motion for preliminary injunction, Plaintiff requests that this Court award him disability benefits pursuant to 38 U.S.C. § 1151 during the pendency of this action.   (Dkt. No. 3, at 1 [Plf.'s Mot. Prelim. Inj.].)

Generally, in its response, Defendant argues as follows: (1) this Court does not have

subject-matter jurisdiction to determine Plaintiff's entitlement to disability benefits; and (2) even if this Court had subject-matter jurisdiction over this dispute, Plaintiff's motion should be denied because there is no nexus between the injunctive relief sought and the wrongs alleged in the Complaint.   (*See generally* Dkt. No. 16, at 3-4 [Def.'s Opp'n Memo. of Law].)

Generally, in his reply, Plaintiff argues as follows: (1) a response to his initial claim for veterans' benefits has been so delayed that it qualifies as a constitutional deprivation of property; (2) this Court has jurisdiction to consider challenges to the constitutionality of legislation affecting veterans' benefits; and (3) even if this Court does not have jurisdiction to consider Plaintiff's benefits claim, Plaintiff has the right to seek such relief from the Veterans' Court through a writ of mandamus.   (Dkt. No. 17, at 2-4 [Plf.'s Reply Aff.].)   Finally, Plaintiff requests that, if this Court concludes that it does not have jurisdiction over Plaintiff's benefits claim, the case be remanded to the Veterans' Court and Plaintiff be permitted to amend his Complaint to include a cause of action for constitutional deprivation of property and due process violation.   (*Id*. at 4.)

## C.       Parties' Briefing on Defendant's Motion to Dismiss

Generally, in support of its motion to dismiss, Defendant argues as follows: (1) Plaintiff's FTCA claim is barred by the statute of limitations, because he failed to file this action within six months of the denial of his 2014 Standard Form 95 claim (his "first SF-95 claim") on January 28, 2015; (2) Plaintiff's 2019 Standard Form 95 claim (his "second SF-95 claim") was properly denied and cannot be considered a separate and new claim, because it alleges negligent acts that are identical to the ones alleged in the first SF-95 claim; (3) even if Plaintiff's second SF-95 claim could be considered a separate and new claim, it would be untimely, because it was not

3

filed within two years of the accrual of that new claim, which occurred no later than the filing of

the first SF-95 claim; (4) Plaintiff has not alleged facts sufficient to toll the statute of limitations

pursuant to the continuing treatment doctrine, because the doctrine generally applies to a

continuous course of treatment by a single physician, and here Plaintiff was treated by multiple

providers; and (5) indeed, neither of the Second Circuit's identified rationales for applying the

continuous treatment doctrine apply in this case.   (*See generally* Dkt. No. 20, Attach. 1, at 4-8

[Def.'s Memo. of Law].)

Generally, in response to Defendant's motion, Plaintiff argues as follows: (1) Plaintiff's

2019 SF-95 claim was not an untimely request for reconsideration of the denial of his first SF-95

claim, but rather a new and different claim, because it involved both separate negligent acts and a

separate injury; (2) Plaintiff's claims related to his second SF-95 claim arose in January 2019

when he became aware of his thoracic injury; (3) Plaintiff's claims related to his first SF-95

claim are not time-barred because the statute of limitations was tolled, pursuant to the continuous

treatment doctrine, until January 2019, when Plaintiff's continuous treatment was terminated; (4)

the continuous treatment doctrine is not limited to treatments by a single physician, but is

properly applied where a doctor's associates or subordinates negligently treat the same condition;

and (5) both of the Second Circuit's identified rationales for application of the continuous

treatment doctrine apply in this case.   (*See generally* Dkt. No. 1, at 4-7 [Plf.'s Opp'n Memo. of

Law].)

Generally, in its reply, Defendant argue as follows: (1) Plaintiff is unable to point to any

case law in which the continuous treatment doctrine was asserted as a basis for tolling the six-

month time period to file a lawsuit after the first denial of an administrative claim; and (2)

Plaintiff's second SF-95 claim does not allege a new and different negligent act or omission, only the anticipated progression of the injury from the same act or omission that formed the basis of his first SF-95 claim, and thus the second SF-95 claim is merely duplicative of the first SF-95 claim.   (*See generally* Dkt. No. 24, at 1-3 [Def.'s Reply Memo. of Law].)

## II.      RELEVANT LEGAL STANDARDS

### A.      Legal Standards Governing Motion for Preliminary Injunction

"To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint."   *Rucano v. Venettozzi*, 18-CV-0218, 2019 WL 1306073, at *2 (N.D.N.Y. Mar. 22, 2019).   In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'"   *Otoe-Missouria Tribe of Indians v. N.Y.S. Dep't of Fin. Servs.*, 769 F.3d 105, 119 (2d Cir. 2014) (quoting *Lynch v. N.Y.*, 589 F.3d 94, 98 (2d. Cir. 2009)).   When the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is heightened.   *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (internal quotation marks omitted).   A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."   *Cacchillo*, 638 F.3d at 406 (internal quotation marks omitted).

"'[T]he single most important prerequisite for the issuance of a preliminary injunction'"

is a showing that the moving party will suffer irreparable harm.   *Bisnews AFE (Thailand) Ltd. v. Aspen Research Grp. Ltd.*, F. App'x 57, 58 (2d. Cir. 2011) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).   Speculative injury is not the province of injunctive relief.   *City of LA v. Lyons*, 461 U.S. 95, 111-12 (1983).   Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that, absent a preliminary injunction, he or she will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.   *Rucano* 2019 WL 1306073, at \*1.

**B.      Legal Standard Governing Motions to Dismiss for Failure to State Claim**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.   *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.   Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2) [emphasis added].   In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

6

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."   *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case).   On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."   *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[1]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.   *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).   For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."   2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).   For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.   *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.   *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).   In doing so, the Court

---

[1]      *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Twombly*, 127 S. Ct. at 1968-69.   Rather than turn on the *conceivability* of an

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an

actionable claim.   *Id*. at 1965-74.   The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

pleading must contain at least "some factual allegation[s]."   *Id*. at 1965.   More specifically, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level [to a

plausible level]," assuming (of course) that all the allegations in the complaint are true.   *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009).   "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . .   [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief."   *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks

and citations omitted].   However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability

requirement."   *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

8

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice."   *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice.   *Iqbal*, 129 S.Ct. at 1949   (internal citations and alterations omitted).   Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id.*

(citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.   Generally, when contemplating a

dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters

outside the four corners of the complaint may be considered without triggering the standard

governing a motion for summary judgment: (1) documents attached as an exhibit to the

complaint or answer, (2) documents incorporated by reference in the complaint (and provided by

the parties), (3) documents that, although not incorporated by reference, are "integral" to the

complaint, or (4) any matter of which the court can take judicial notice for the factual

background of the case.[2]

---

[2]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a
pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573,
2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to
dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.
R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the
complaint or answer, [2] documents incorporated by reference in the complaint (and provided by
the parties), [3] documents that, although not incorporated by reference, are "integral" to the
complaint, or [4] any matter of which the court can take judicial notice for the factual
background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may
consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and

9

### C.      Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an

accurate understanding of the relevant points of law contained in the legal standards governing

Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in

this Decision and Order, which (again) is intended primarily for review by the parties.   (*See*

*generally* Dkt. No. 20 [Def.'s Memo. of Law]; Dkt. No. 23 [Plf.'s Opp'n Memo. of Law].)

## III.      ANALYSIS

### A.      Whether Plaintiff's Motion for Preliminary Injunction Should Be Granted

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendant's opposition memorandum of law.   (Dkt. No. 16, at 3-4 [Def.'s

Opp'n Memo. of Law].)   To those reasons, the Court adds the following analysis.

> **1.   There Is No Nexus Between the Preliminary Injunctive Relief Sought and the Wrongs Alleged in Plaintiff's Complaint**

As a threshold matter, the Court accepts Defendant's argument that there is no nexus

---

documents incorporated by reference in the complaint. . . .   Where a document is not
incorporated by reference, the court may neverless consider it where the complaint relies heavily
upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.   It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

between the preliminary injunctive relief sought and the wrongs alleged in Plaintiff's Complaint.

In his Complaint, Plaintiff asserts claims for medical malpractice and negligence under the

FTCA.   (Dkt. No. 1 [Plf.'s Compl.].)   Nowhere in Plaintiff's Complaint does he discuss any

relief related to his application for VA disability benefits under 38 U.S.C. § 1151.   (*Id.*)

Consequently, no relationship exists between the conduct giving rise to the Complaint and the

injury claimed in the motion (and Plaintiff would not be entitled to the relief sought in his motion

for preliminary injunction even if he were to be successful on any of the claims in his

Complaint).   As a result, Plaintiff has not shown entitlement to a grant of preliminary injunction.

> **2.  Even if Plaintiff's Motion Were Liberally Construed as Having Amended His Complaint to Include the Benefits Dispute, He Still Would Not Be Entitled to the Relief Sought Because this Court Would Lack Subject-Matter Jurisdiction Over that Claim**

As Plaintiff is proceeding *pro se*, this Court must extend him special solicitude in

construing his submissions.   *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d

Cir. 2006) ("[T]here have been many cases in which we have said that a pro se litigant is entitled

to special solicitude, that a pro se litigant's submissions must be construed liberally, and that

such submissions must be read to raise the strongest arguments that they suggest.").   Even were

the Court to liberally construe Plaintiff's motion as effectively amending his Complaint, he still

would not be entitled to the relief sought.

The Court accepts Defendant's argument that this Court does not have subject-matter

jurisdiction to determine Plaintiff's entitlement to disability benefits.   Under 38 U.S.C. §§ 511,

7252 & 7292, such claims may be reviewed only by the United States Court of Appeals for

Veterans Claims and the United States Court of Appeals for the Federal Circuit, and may not be

reviewed by any other court.   *See Menendez v. United States*, 67 F. Supp.2d 42, 45 (D.P.R.

11

1999) ("[Section 511] bars the judicial review of a decision of the Secretary of the Department of Veterans Affairs which may affect the provision of benefits."); *Sugrue v. Derwinski*, 808 F. Supp. 946, 948 (E.D.N.Y. 1992) (dismissing a claim for lack of subject matter jurisdiction "Because this Court is precluded from reviewing VA determinations of benefits awards or of disability ratings").   Because this Court lacks subject-matter jurisdiction over the benefits dispute, it may not take any action on the merits of that motion.

### 3.   This Court Has No Basis to Remand Plaintiff's FTCA Claim

The present case was not removed to this Court from the Court of Appeals for Veterans' Claims.   (*See generally* Docket Sheet.)   Rather, it was brought entirely pursuant to this Court's original jurisdiction over FTCA claims.   Plaintiff does not cite any case law—nor has the Court been able to locate any case law—in which an action under the FTCA has been "remanded" to an adjudicative body from which it did not originate.   Moreover, this Court, not the Court of Appeals for Veterans' Claims, has subject-matter jurisdiction over a FTCA action.   *See* 28 U.S.C. § 1346(b)(1) ("The district courts . . . shall have exclusive jurisdiction over civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945 . . . .").   As a result, Plaintiff has not shown that there is a basis for transferring this suit to any other court, much less the Court of Appeals for Veterans' Claims.   Additionally, if Plaintiff wishes to pursue a claim related to the VA failing to act on his application for benefits in an effort to compel the provision of those benefits, he must separately seek relief from the Court of Appeals for Veterans' Claims.

### 4.   Plaintiff's Desired Amendment Would Be Futile

In his reply affidavit, Plaintiff requests to amend his Complaint to include constitutional

due process and deprivation of property claims.   (Dkt. No. 17, at 4 [Plf.'s Reply Aff.].)   If

Plaintiff wishes to amend his Complaint, he must file a formal motion to amend and attach a

copy of the proposed amended complaint, pursuant to L.R. 7.1(a)(4).

The Court would note, however, that, in the Second Circuit, styling a veterans' benefits

claim as a deprivation-of-property claim is insufficient to circumvent the bar on judicial

reviewability where that claim essentially amounts to a challenge of the denial of benefits or of

any other decision made by the Agency in connection with that benefits adjudication.   *See*

*Pappanikoloaou v. Administrator of Veterans Admin.*, 762 F.2d 8, 9 (2d Cir. 1985) ("To the

extent the complaint seeks damages for the VA's denial of due process in handling his claim, we

agree with those circuits that have held that one may not circumvent § 211[a] by seeking

damages on a constitutional claim arising out of a denial of benefits."); *Eastern Paralyzed*

*Veterans Ass'n, Inc. v. Veterans' Admin.*, 762 F. Supp. 539, 542 (S.D.N.Y. 1991) (stating that the

Second Circuit appears to have agreed with the authorities which have "held that due process

challenges to the procedures followed by the VA in denying their individual benefits claims were

unreviewable").

To be sure, Plaintiff's due process claim arises out of a delay in the VA's decision

regarding his benefits rather than a definitive denial of those benefits.   However, because this

claim involves a due process challenge to a VA procedure, the Second Circuit's rationale applies

just the same.   *See Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1029 (9th Cir. 2012)

(concluding that the District Court lacked jurisdiction over a challenge to the constitutionality of

a delay of VA benefits because the Court "would need to review individual claims for benefits"

and "the decisions rendered by the regional office of the VA"); *Beamon v. Brown*, 125 F.3d 965,

971 (6th Cir. 1997) ("[T]he VJRA explicitly granted comprehensive and exclusive jurisdiction to

the CVA and Federal Circuit over claims seeking review of VA decisions that relate to benefits

decisions under § 511(a).   This jurisdiction includes constitutional issues and allegations that a

VA decision has been unreasonably *delayed*.") (emphasis added).

As a result, the Court finds that, even if Plaintiff were to file an Amended Complaint to

add the above due process claims, such efforts would be futile because Plaintiff cannot cure this

Court's lack of subject-matter jurisdiction by amending his claim to include constitutional

challenges. For these reasons, Plaintiff's motion for preliminary injunction is denied.

### B.      Whether Defendant's Motion to Dismiss Should be Granted

After carefully considering the matter, the Court answers this question in the affirmative

in part, for the reasons stated in Defendant's memorandum of law and reply memorandum of law

(Dkt. No. 20 [Def.'s Memo. of Law]; Dkt. No. 24, at 1-3 [Def.'s Reply Memo. of Law]), and in

the negative in part, for the reasons stated in Plaintiff's memorandum of law and sur-reply

affidavit (Dkt. No. 23 [Plf.'s Memo. of Law]; Dkt. No. 26-1 [Plf.'s Sur-Reply Aff.]).   To those

reasons, the Court would only add three points.

### 1.   Plaintiff's Claims Based on the 2014 SF-95 Are Untimely and Not Tolled by the Continuous-Treatment Doctrine

For the reasons stated in Defendant's reply memorandum of law (Dkt. No. 24, at 1-2

[Def.'s Reply Memo. of Law]), the Court accepts Defendant's argument that the policy

rationales underlying the continuous treatment doctrine are not properly applied here.

Particularly, as Defendant notes, the Second Circuit has found that there are two specific

rationales underlying the continuing treatment doctrine: (1) "it is not reasonable to expect a

patient who is in the continuing care of a doctor to discover that the doctor's acts may be the

cause of his injuries"; and (2) "it is absurd to expect a patient being treated by a doctor or

hospital to interrupt corrective treatment by instituting suit against either while under their

continuing care." *Ulrich v. Veterans' Admin. Hosp.*, 853 F.2d 1078, 1080 (2d Cir. 1988).   Given

that Plaintiff was able to file a SF-95 detailing Defendant's alleged failure to "properly and

timely diagnose tandem spondylosis of both the cervical and lumbar spines has resulted in

continued pain, disability, and progression of claimant's lumbar stenosis, radiculopathy, and

other conditions to such a degrees that they are no longer treatable without permanent residual

disability," it is clear that Plaintiff was in fact able to discover that Defendant's actions caused

his alleged injuries and thus the first rationale does not apply in this case.   Likewise, the second

rationale also does not apply because it is clear that Plaintiff was not worried about his

complaints interrupting his treatment, as he engaged in both prior litigation and the current SF-95

complaint all while continuing his treatment with Defendants, and that his complaints about his

treatment did not in fact interrupt his corrective treatment.   *See Barbaro v. United States ex rel.*

*Federal Bureau of Prisons FCI Otisville*, 05-CV-6998, 2006 WL 2882975, at \*3 (S.D.N.Y. Oct.

10, 2006) (finding that the continuous treatment doctrine did not apply where the plaintiff was

aware of the alleged deficiency in the treatment he was receiving, and made "near-constant"

complaints to prison officials about his treatment that showed he was not afraid of complaining

while continuing to undergo care).   Additionally, in a more general sense, the Court cannot find,

based on the allegations, that Plaintiff has been pursuing his rights as to the 2014 SF-95

diligently; he failed to take any action on his claim following the administrative denial of his

2014 SF-95 until he filed the second SF-95 in 2019, approximately five years later.   *See*

*Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015) ("Generally, a litigant seeking

equitable tolling bears the burden of establishing two elements: [1] that he has been pursuing is

rights diligently, and [2] that some extraordinary circumstance stood in his way.").

As a result, the Court finds that Plaintiff has not alleged facts to plausibly suggest that the

continuing treatment doctrine should apply to toll the six-month time period.

### 2. Plaintiff's Claims Based on the 2019 SF-95 Are Not Wholly Duplicative of His Claims Based on the 2014 SF-95

The Court rejects Defendant's argument that Plaintiff's second SF-95 claim cannot be

considered the basis for new and separate claims from those raised by his 2014 SF-95 claim.

Defendant relies on cases that apply the universally accepted rule that *entirely duplicative* claims

will be barred under preclusion principles.   *See Roman-Cancel v. United States*, 614 F.3d 37,

41-43 (1st Cir. 2010) (barring a second claim alleging identical acts of negligence resulting in the

same "single injury"); *Matos v. Sec'y of Health*, 581 F.2d 282, 286 (1st Cir. 1978) (barring a

second administrative claim for the *same benefits* on the *same grounds*).   To be fair, "a claimant

cannot restart the six-month clock simply by filing a second, duplicative claim; '[o]ne bite at the

apple is all that the FTCA's claim-filing scheme allows.'" *Freeman v. United States*, 166 F.

Supp. 3d 215, 222 (D. Conn. 2016) (citing *Willis v. United States*, 719 F.2d 608 [2d Cir. 1983]).

Plaintiff argues, however, that his second SF-95 claim involves a separate and distinct injury

than the injury involved in his first SF-95 claim.   (Dkt. No. 26, Attach. 1, at ¶¶ 7–8 [Plf.'s Sur-

Reply Aff.].)   Unlike in *Freeman* (where two SF-95 claims were found to be duplicative

because they both alleged injuries based on the over-prescription of Simvastatin for the same

discrete period of time), Plaintiff is alleging that he continued to receive treatment with

Defendant for years after the actions underlying his first SF-95 claim, and that, during that time,

he developed additional spinal problems as a result of the failure to properly treat him, problems

that were not discovered until 2019.   That his second SF-95 claim relies on an injury which may

be the result of the same continuous course of negligent conduct at issue in the first SF-95 claim

does not mandate preclusion because, as already noted, he alleges that he suffered a new injury.

*See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499-505 (2d Cir. 2014) ("When a

subsequent action involves a claim over 'ongoing conduct' and it relies on facts that occurred

both before and after the earlier action commenced, claim preclusion will not bar a suit . . . .")

(quoting *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 113 [2d Cir. 2000]).   The Court

therefore finds that Plaintiff's claims based on the 2019 SF-95 claim are barred only to the extent

they are actually duplicative of the 2014 SF-95 claim.   As a result, any claim related to

Plaintiff's lumbar spine as that condition existed and was perceived at the time he filed his 2014

SF-95 claim is barred as duplicative; but any claim based on Plaintiff's thoracic spine resulting

from Defendant's alleged continuing negligence and medical malpractice is not barred because it

was not raised in the 2014 SF-95 claim, and, as will be discussed below, was not known to

Plaintiff at the time he submitted the 2014 SF-95 claim.

### 3.   Plaintiff's Non-Duplicative Claims Based on the 2019 SF-95 Claim Are Not Untimely Under 28 U.S.C. §§ 1346(b) and 2674

As to the remaining non-duplicative claims outlined above, the Court rejects Defendant's

argument that these claims would be untimely under 28 U.S.C. §§ 1346(b) and 2674 for the

reasons stated in Plaintiff's opposition memorandum of law.   (Dkt. No. 23, at 4 [Plf.'s Opp'n

Memo. of Law].)   If, as Plaintiff argues, the second SF-95 claim is a separate and new claim, the

cause of action on which it is based arises on the date of his discovery of critical facts—in this

case, the newly diagnosed injury.   *See Ulrich.*, 853 F.2d at 1080 ("An FTCA action accrues

when the plaintiff in the exercise of reasonable diligence knows both the existence and the cause

of his injury.").   Plaintiff alleges in the Complaint that he did not become aware of any injury or

degeneration in his thoracic spine specifically until January 2019.   (Dkt. No. 1, at ¶ 21 [Pl.'s

Compl.].)   Plaintiff submitted the second SF-95 claim in May 2019 (within the two-year

required period of when he learned of that injury) and filed the current action on October 4,

2019, which was within six months after the VA's denial of that claim on July 18, 2019.   (Dkt.

No. 1, at 9; Dkt. No. 20, Attach. 2.)

As a result, the Court finds that the claims in Plaintiff's Complaint based on the non-

duplicative portions of his 2019 SF-95 claims related to his thoracic spine condition were timely

filed with both the VA and this Court, and Defendant's motion to dismiss must be denied as to

those portions of his claims.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion for preliminary injunction (Dkt. No. 3) is **DENIED**;

and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 20) is **GRANTED in part** and

**DENIED in part**, such that Plaintiff's claims for medical malpractice and negligence are

**DISMISSED** to the extent that they are based on conduct and injuries asserted in the 2014 SF-95

claim, but his claims otherwise **SURVIVE** to the extent they are based on conduct and injuries

associated with his thoracic spine as asserted in the 2019 SF-95.

Dated:  July 27, 2020
          Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge

18