UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT CARROLL,

                                  Plaintiff,

v.                                                                        1:19-CV-1230 (GTS/DJS)

THE UNITED STATES OF AMERICA,

                                  Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

ROBERT CARROLL
  Plaintiff, *Pro Se*
P.O. Box 201
Connelly, NY 12417

HON. CARLA B. FRIEDMAN                KAREN F. LESPERANCE, ESQ.
United States Attorney for the N.D.N.Y.      Assistant United States Attorney
  Counsel for Defendant
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY 12207-2924

GLENN T. SUDDABY, United States District Court Judge:

## DECISION and ORDER

Currently before the Court, in this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, filed by Robert Carroll ("Plaintiff") against the United States of America ("Defendant"), are the parties' cross-motions for summary judgment. (Dkt. Nos. 50, 54.) For the reasons set forth below, Defendant's motion is granted, and Plaintiff's cross-motion is denied.

**I. RELEVANT BACKGROUND**

1

**A. Plaintiff's Claims**

Generally, liberally construed, Plaintiff's Complaint alleges that, between approximately January of 1991 and May of 2019, at the Castle Point VA Medical Center in Wappingers Falls, New York, and the Stratton VA Medical Center in Albany, New York, Defendant breached its duty of care as a medical provider by negligently retaining inadequate staff who failed to properly or timely diagnose Plaintiff's tandem spondylosis and instead attributed post-operative symptoms solely to cervical myelopathy, without considering alternate causes. (See generally Dkt. No. 1, at 7 [Plf.'s Compl.].) Plaintiff further alleges that, as a direct and proximate result of that breach, he has endured pain, suffering, mental anguish and other consequential damages, and will continue to endure the same in the future. (*Id*. at ¶ 35.) Based on these factual allegations, Plaintiff asserts claims of medical malpractice, negligence, and vicarious liability against Defendant. (*Id*. at ¶¶ 25, 34, 41.) Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id*.)

Following the Court's Decision and Order of July 27, 2020, Plaintiff's claims for medical malpractice and negligence were dismissed to the extent that they are based on conduct and injuries asserted in the 2014 SF-95 claim, but Plaintiff's claims otherwise survived to the extent they are based on conduct and injuries associated with his thoracic spine as asserted in the 2019 SF-95. (Dkt. No. 28, at 18.)

**B. Undisputed Material Facts on Defendant's Motion for Summary Judgment**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant in its Statement of Material Facts and either admitted by Plaintiff

or denied without an accurate supporting record citation.  (*Compare* Dkt. No. 50-3 *with* Dkt. No. 57-1.)

Plaintiff was diagnosed with cervical herniated discs and compressive myelopathy in 1998.  Plaintiff had surgery in 1998, but the surgery did not reverse the compressive myelopathy.  On or about February 3, 2012, Plaintiff was diagnosed with spinal stenosis of the lumbar spine at Kingston Neurological Associates, a non-VA provider.

On February 6, 2012, Plaintiff underwent an MRI of the lumbar spine without contrast at Ulster Medical and Surgical Specialists.  (Dkt. No. 51-2.)  According to notes signed by Dr. Richard Levy, "[l]imited evaluation of the lower thoracic spine reveal[ed] multilevel disc bulging and endplate osteophyte formation greater anteriorly most pronounced at T12-L1."  (*Id.*, at 1.)  At T12–L1, there was "mild bilateral facet hypertrophy greater rightward with mild right degenerative foraminal stenosis."  (*Id.*)  Overall, the MRI showed "diffuse degenerative change in the thoracic and lumbar spine," with findings "most pronounced at L4–5 with bilateral high grade foraminal and spinal stenosis, the latter compounded by probable right synovial cyst."  (*Id.*, at 3.)  Clinical correlation and imaging follow-up were recommended.  (*Id.*)

On February 27, 2012, Plaintiff was seen at the Albany Medical Center complaining of increasing gait difficulty over the prior year, and he was assessed as having cervical spondylotic myelopathy and lumbar spondylosis with stenosis at L4–L5.  On June 26, 2014, Plaintiff returned to the Albany Medical Center and reported worsening spasticity in the lower extremities.  Plaintiff requested imaging of the lumbar spine, and he was counseled that it was unlikely that a lower lumbar compression syndrome would contribute to spasticity.  He elected to continue with exercises on his own and agreed to consider a referral to physical medicine and rehabilitation.

On November 6, 2017, Plaintiff was seen by Dr. Rossella Cavaliere at the VA Neurology Clinic. He complained of low back pain radiating down the legs. Plaintiff reported that, after consulting with the VA orthopedic clinic in 2014 about his treatment options, he had opted for pain management and physical therapy instead of surgery. He reported that his symptoms had been worsening and that he wanted to reevaluate surgery.

On March 6, 2018, Plaintiff had a Neurosurgery consult at the Syracuse VA. The neurosurgeon advised that an L4/5 lumbar laminectomy would be reasonable, but Plaintiff declined surgery and elected to continue medical management of his symptoms with his primary care provider. On January 23, 2019, Plaintiff had MRIs of the cervical and thoracic spine. The MRI of the thoracic spine showed the following:

> On the thoracic disc spaces, moderate to prominent degenerative changes are seen particularly in the lower disc spaces. Small disc herniations and mild disc bulging are seen in the disc spaces. Mild spinal canal narrowing is seen at T10–11. No other significant spinal stenosis is seen.

(Dkt. No. 51-8, at 6.)

On February 13, 2019, Plaintiff was seen for a follow-up visit at the VA Neurology clinic. Dr. Cavaliere noted that his cervical MRI was unchanged, and his thoracic spine MRI showed "minor abnormalities." Dr. Cavaliere instructed Plaintiff to continue his present treatment and follow up with his doctors as scheduled. She indicated that follow-up with neurology would be "as needed"; regular follow-up with the neurology clinic was not needed, and no follow-up appointment would be scheduled.

On January 21, 2021, Plaintiff was seen at the Neurosurgery Clinic at the Albany Medical Center for evaluation and possible surgical management of lumbar spinal stenosis and a synovial cyst on his lumbar spine. He had surgery to remove the cyst on April 12, 2021.

### C. Asserted Facts on Plaintiff's Cross-Motion for Summary Judgment

Although Plaintiff submitted a Statement of Material Facts and an Amended Statement of Material Facts in support of his cross-motion for summary judgment, he failed to set forth a *specific citation* to the record in support of each asserted fact. (Dkt. Nos. 54, 58.) Therefore, Plaintiff has failed to comply with Local Rule 56.1(a) of the Local Rules of Practice for this Court, and the Court will disregard any asserted fact unsupported by a specific citation to the record. Nonetheless, to the extent Plaintiff's asserted facts reference medical records, the Court has described them above. Further, recognizing Plaintiff's *pro se* status and out of an abundance of caution, the Court will summarize relevant portions of Plaintiff's affidavit and testimony.

According to Plaintiff, VA neurologists failed to consider that his thoracic spine was arthritic and had developed spondylosis, despite his complaints of pain in the thoracic spine and the 2012 imaging showing degenerative changes in the thoracic spine. (Dkt. No. 54-2, ¶¶ 4–5.) Plaintiff asserts that VA neurologists failed to order imaging of his thoracic spine and failed to diagnose his thoracic spine condition, which caused it to grow worse. (*Id.*, ¶¶ 6–7.) Plaintiff further asserts that, when he had a thoracic MRI in 2019, Dr. Cavaliere failed to inform him of the full results, specifically "moderate to prominent degenerative changes," "[s]mall disc herniations and mild disc bulging," and [m]ild spinal canal narrowing" at T-10–11. (*Id.*, ¶¶ 8–10 [quoting Dkt. No. 51-8, at 6].) Plaintiff asserts that Dr. Cavaliere "erroneously noted that the thoracic spine MRI showed 'minor abnormalities.'" (*Id.*, ¶ 9 [quoting Dkt. No. 51-10, at 2].) According to Plaintiff, Dr. Cavaliere failed to diagnose and treat his thoracic spondylosis, arthritis, and disc herniations. (*Id.*, ¶¶ 11–12.)

At his deposition, Plaintiff testified that doctors at the VA incorrectly attributed his symptoms to myelopathy instead of further investigating his thoracic spine condition to diagnose and treat thoracic spondylosis.  (Dkt. No. 50-8, at 4.)  Plaintiff admitted that it was difficult for him to distinguish between symptoms caused by his thoracic spine condition versus any of his other pre-existing back conditions.  (*Id.*, at 4–8, at 11–12, 22–23.)  Plaintiff also admitted that he had not been formally diagnosed with thoracic spondylosis.  (*Id.*, at 15.)  Plaintiff testified that he had not retained a medical expert witness and that "a lot of this speaks for itself."  (*Id.*, at 20.)

### D. Summary of Parties' Briefing on Their Cross-Motions for Summary Judgment

#### 1. Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment

Generally, Defendant argues that it is entitled to summary judgment because "Plaintiff has not adduced expert testimony – or any other evidence – in support of his conclusory allegation of medical malpractice."  (Dkt. No. 50-2, at 7.)  According to Defendant, Plaintiff has failed to establish a *prima facie* case of medical malpractice (which is his essential claim in this action) because he has not provided evidence from which a reasonable jury could find that Defendant's doctors breached the applicable standard of care or that any breach proximately caused him injury.  (*Id.*, at 8–11.)

#### 2. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion and in Support of Plaintiff's Cross-Motion for Summary Judgment

Generally, Plaintiff argues that he is entitled to summary judgment on his negligence and medical malpractice claims.  (Dkt. No. 54-1, at 7.)  According to Plaintiff, he has provided evidence of medical visits and tests which "show that there was a delayed diagnosis of Plaintiff's thoracic spondylosis, arthritis, and stenosis."  (*Id.*)  Plaintiff asserts that VA doctors

"failed to consider any cause other than cervical myelopathy as a cause of [his] symptoms." (*Id.*, at 8.)

### 3. Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion and in Reply in Further Support of Its Motion

Generally, in opposition to Plaintiff's cross-motion, and in reply to Plaintiff's opposition to its motion, Defendant argues that summary judgment should be granted in Defendant's favor because Plaintiff failed to comply with Local Rule 56.1 by responding to Defendant's Statement of Material Facts, and, further, that Plaintiff's failure to provide expert testimony in support of his medical malpractice claim is fatal to his case. (Dkt. No. 55, at 2–7.)

### 4. Plaintiff's Reply in Further Support of His Cross-Motion and in Sur-Reply to Defendant's Reply Memorandum[1]

With his reply papers, Plaintiff has submitted a response to Defendant's Statement of Material Facts.[2] (Dkt. No. 57-1.) Plaintiff has also submitted an affidavit, wherein he asserts that "the alleged malpractice is clear and obvious to a lay person and therefore does not require expert testimony, but he also intends to elicit expert opinions at trial from the VA neurologist defendants." (Dkt. No. 57, ¶ 5.) Alternatively, Plaintiff requests 90 days to obtain a medical expert. (*Id.*, ¶ 19.)

## II. RELEVANT LEGAL STANDARDS

### A. Standard Governing Motion for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant

---

[1] Although Plaintiff did not seek prior leave to file a sur-reply, the Court has accepted his sur-reply out of special solicitude to him as a *pro se* litigant.

[2] Although Plaintiff's response to Defendant's Statement of Material Facts should have been submitted with his opposition papers, the Court will consider it properly made, again out of special solicitude to him as a *pro se* litigant.

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  And the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.  In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 32–24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the principle that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*.  This is because the Court extends special solicitude to the *pro se* litigant by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.  On summary judgment, Local Rule

8

56.1(a) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1(a). "[E]ven *pro se* litigant must obey a district court's procedural rules." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 427 & n.4 (N.D.N.Y. 2009) (citing cases).

For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement – even where the non-movant was proceeding *pro se*. *See Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

### B. Standard Governing Negligence and Medical Malpractice Claims

"An action to recover for personal injuries or wrongful death against a medical practitioner or a medical facility or hospital may be based either on negligence principles or on the more particularized medical malpractice standard." *Coursen v. N.Y. Hosp.-Cornell Med. Ctr.*, 114 A.D.2d 254, 256 (N.Y. App. Div., 1st Dept. 1986). "T]he distinction between medical malpractice and negligence is a subtle one, for medical malpractice is but a species of negligence and no rigid analytical line separates the two." *Naughright v. Weiss*, 857 F. Supp. 2d 462, 474 (S.D.N.Y. 2012) (citation and quotation marks omitted). "The distinction . . . turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of the common everyday experience of the trier of the facts." *Miller v. Albany Med. Ctr. Hosp.*, 464 N.Y.S.2d 297, 298–99 (N.Y. App. Div., 3d Dept. 1983).

"In determining whether an action sounds in medical malpractice or simple negligence, the critical question is the nature of the duty to the plaintiff which the defendant is alleged to have breached ... When the duty arises from the physician-patient relationship or is substantially related to medical treatment, the breach gives rise to an action sounding in medical malpractice, not simple negligence." *LaRusso v. St. George's Univ. Sch. of Med.*, 936 F. Supp. 2d 288, 304 (S.D.N.Y. 2013) (citing *Stanley v. Lebetkin*, 507 N.Y.S.2d 468, 468 (N.Y. App. Div., 2d Dept. 1986)). "[W]hen the gravamen of the complaint is not negligence in furnishing medical treatment to a patient, but rather a [provider's] failure to fulfill a different duty, the claim sounds in negligence." *Dispenzieri v. Hillside Psychiatric Hosp.*, 724 N.Y.S.2d 203, 204 (N.Y. App. Div., 2d Dept. 2001).

Simple negligence principles apply to those cases where the alleged negligent act may be readily determined by the trier of fact based on common knowledge. *Coursen*, 114 A.D.2d at 256. To prevail on a claim of negligence under New York law, a plaintiff must prove the following: (1) the defendant had a duty to the plaintiff to use reasonable care; (2) breach of that duty by the defendant; and (3) injury to the plaintiff. *See Ben v. United States*, 160 F. Supp. 3d 460, 477 (N.D.N.Y. 2016) (citing Restatement (Second) of Torts § 315).

To establish a claim of medical malpractice under New York law, a plaintiff must show the following: (1) the defendant breached the standard of care in the community, and (2) the breach proximately caused the plaintiff's injuries. *See Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir.1994) (citing New York cases). New York law further provides that, "except as to matters within the ordinary experience and knowledge of laymen, in a medical malpractice action, expert medical opinion is required to demonstrate merit." *Fiore v. Galang*, 64 N.Y.2d 999, 1001 (N.Y. 1985); *see also Wells v. State*, 644 N.Y.S.2d 526, 527 (N.Y. App. Div., 2d Dept.

10

1996) ("Where medical issues are not within the ordinary experience and knowledge of lay persons, expert medical opinion is a required element of a *prima facie* case of medical malpractice.").

**III. ANALYSIS**

After careful consideration, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claims for the reasons stated in Defendant's memoranda of law. *See, supra,* Part I.D. of this Decision and Order. To those reasons, the Court adds the following analysis.

In general, Plaintiff's remaining claims in this case allege that the Veteran's Administration ("VA") was negligent and committed medical malpractice in treating his thoracic spine condition. (Dkt. No. 1; Dkt. No. 28.) Plaintiff's theory of liability is the same for both negligence and medical malpractice—that VA doctors failed to investigate, diagnose, and treat his alleged thoracic spine condition. Indeed, the facts alleged in Plaintiff's negligence claim are repeated verbatim in his medical malpractice claim. (Dkt. No. 1, ¶¶ 23–37.) Because Plaintiff's claims concern medical treatment and the duty owed by physician to patient, his case boils down to a single medical malpractice claim. *LaRusso*, 936 F. Supp. 2d at 304.[3]

Defendant argues that Plaintiff cannot establish a *prima facie* case of medical malpractice claim because he has adduced no expert testimony to support his claim. (Dkt. No. 50-2, at 8.) In response, Plaintiff argues that "[t]he medical record clearly shows negligent treatment and medical malpractice." (Dkt. No. 54-1, at 5.) According to Plaintiff, the issues

---

[3]    Furthermore, as pled, Plaintiff's claim for vicarious liability cannot succeed if his underlying claim of medical malpractice fails. *See, e.g., Komanicky v. Contractor*, No. 2013-2863, 2015 WL 5726376, at *5 (N.Y.S. Sup. Ct., Broome Cnty. Aug. 10, 2015) ("It is well settled that there is no cause of action for vicarious liability against a director or officer of a hospital without proof of a negligent act . . . .") (citation omitted).

raised in this case "are of the type that would ordinarily fall within the knowledge and experience of a layperson." (*Id.*, at 7.)

As mentioned above, it is incumbent upon the plaintiff to present expert testimony to establish a *prima facie* case of medical malpractice, unless the alleged act of malpractice falls within the competence of a lay jury to evaluate. Further, "even where negligence is easily within the layman's realm of knowledge and hence properly provable without expert testimony, expert testimony may be required to prove that the negligence was the proximate cause of the injury complained of." *Sitts v. United States*, 811 F.2d 736, 740 (2d Cir. 1987). Here, Plaintiff argues that his medical records evidence several acts of medical malpractice: (1) "failure to opportunely diagnose thoracic spondylosis"; (2) "misrepresentation of the severity of plaintiff's thoracic condition"; and (3) "a failure to discuss, treat or counsel plaintiff for his thoracic condition in an attempt to cover up for their negligence and malpractice." (Dkt. No. 54-1, at 5.) Plaintiff also suggests that it was a breach of the standard of care to do the following: (1) "fail to order a thoracic MRI, or clinically investigate the thoracic spine"; (2) "report minimum adverse findings when the radiologist reports significant changes"; (3) "fail to disclose the thoracic findings with the patient and prepare a treatment plan"; and (4) "to suddenly stop consulting with a patient with cervical, thoracic, and lumbar spondylosis and arthritis immediately following MRI evidence of a delayed thoracic diagnosis." (Dkt. No. 57, ¶ 12.)

However, all of these alleged acts implicate the professional skill and judgment of a physician in evaluating a variety of symptoms, diagnostic tests, and related medical conditions. This is not the rare case where a lay jury can look at medical records and readily draw a conclusion about a doctor's obvious error, such as operating on the wrong body part. Rather, the specialized knowledge of a medical expert is needed to ascertain the appropriate standard of

care and determine whether Plaintiff's neurologists deviated from that standard in failing to diagnose and treat his alleged thoracic spine condition. Moreover, even if the deviations alleged by Plaintiff were reasonably perceptible to a lay jury, expert testimony is required to prove that any such deviation was the proximate cause of injury to Plaintiff. Indeed, Plaintiff concedes that "[i]t is unknown what damage resulted from defendant's failure to order an MRI." (Dkt. No. 54-1, at 8.) And Plaintiff testified at his deposition that it was difficult for him to distinguish between symptoms caused by his alleged thoracic spine condition versus any of his other pre-existing back conditions. (Dkt. No. 50-8, at 4–8, at 11–12, 22–23.) Therefore, the Court concludes that expert testimony is essential to Plaintiff's medical malpractice claim.

Plaintiff also suggests that, if he does not prevail on his motion for summary judgment, he will elicit expert testimony at trial pursuant to the "McDermott Rule." (Dkt. No. 54-1, at 7.) In response, the Government contends that the *McDermott* case is inapposite and does not support Plaintiff's proposition. (Dkt. No. 55, at 7–8.) In *McDermott v. Manhattan Eye Hosp.*, the plaintiff brought a medical malpractice claim against the defendant doctors, and, at trial, she attempted to prove her case by questioning the defendants as to the established medical practice and their knowledge of it. 15 N.Y.2d 20, 25 (N.Y. 1964). The trial court prevented the plaintiff from eliciting such expert opinion evidence from the defendants. *McDermott*, 15 N.Y.2d. at 25. On appeal, the court held that the plaintiff in a malpractice action "is entitled to call the defendant doctor to the stand and question him both as to his factual knowledge of the case (that is, as to his examination, diagnosis, treatment and the like) and, if he be so qualified, as an expert for the purpose of establishing the generally accepted medical practice in the community." *Id.*

After careful consideration, the Court concludes that the *McDermott* case does not permit Plaintiff to forgo an expert for three reasons. First, the *McDermott* case concerned only New York State law and it does not provide a means to circumvent Fed. R. Civ. P. 26(a)(2), which requires that a party disclose the identity of any expert he intends to use at trial. Fed. R. Civ. P. 26(a)(2). Second, the *McDermott* case is distinguishable because the plaintiff sought only to elicit expert testimony to establish the standard of care and made a related offer of proof; in contrast Plaintiff here offers only speculation that an unnamed expert could help prove the elements of his claim. Third, the Court is not aware of any instance in which the *McDermott* case has been successfully invoked by a plaintiff in a federal medical malpractice action to get past summary judgment. The Court sees no compelling reason for this to be the first.

Finally, the Court must address Plaintiff's request for an additional 90 days to obtain a medical expert. Liberally construed, Plaintiff's request could be interpreted as made pursuant to Fed. R. Civ. P. 56(d), which states that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). A party resisting summary judgment on the basis that it needs discovery must submit an affidavit showing the following: "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (internal quotations and citation omitted). Relatedly, a discovery schedule set by the

14

court can only be modified for good cause, which "depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

Here, the parties submitted a Civil Case Management Plan on September 22, 2020, in which they expressed the intent to retain medical experts. (Dkt. No. 32.) The Court ordered that fact and expert discovery be completed by September 30, 2021, and that deadline was later extended until March 1, 2022. (Dkt. Nos. 33, 46.) At no point did Plaintiff raise the issue of retaining an expert or seek an extension of discovery to do so. (*See generally* Docket Sheet.) More than a year has now passed since the end of discovery, and Plaintiff's only explanation for not retaining an expert appears to be that (for some reason) he harbored the subjective belief that he did not need one.[4] Further, Plaintiff has not provided any plausible reason to believe that he could find an expert to support his claim. And, even if he did, that expert would almost certainly have to be deposed by Defendant, causing additional delay in this case (which was filed in 2019). Under these circumstances, Plaintiff has not shown good cause for reopening discovery at this late stage to obtain an expert. Accordingly, Plaintiff's request must be denied. *See Lundstedt v. JP Morgan Chase Bank, N.A.*, 853 F. App'x 704, 708 (2d Cir. 2021) (upholding the district court's decision to not reopen discovery where the *pro se* plaintiff had "ample time to identify and disclose an expert witness during the discovery period").

In summary, the Court recognizes that Plaintiff is appearing *pro se*, but that does not excuse his failure to obtain expert medical testimony to support his claim under the circumstances. Absent such evidence, Plaintiff cannot establish a *prima facie* case of medical malpractice, and Defendant is entitled to summary judgment. *See Farland v. United States*, 622

---

[4] The Court notes that Plaintiff was provided courtesy copies of both the District's Local Rules of Practice and its *Pro Se Handbook*. (Dkt. No. 4.)

F. App'x 12, 13 (2d Cir. 2015) (summary order) (affirming summary judgment against a *pro se* plaintiff for failure to present expert medical testimony in support of medical malpractice claim); *see also Shields v. United States*, 446 F. App'x 325, 326 (2d Cir. 2011) (summary order) (same).

    **ACCORDINGLY**, it is

    **ORDERED** that Defendant's motion for summary judgment (Dkt. No. 50) is **<u>GRANTED</u>**; and it is further

    **ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 54) is **<u>DENIED</u>**; and it is further

    **ORDERED** that the Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: June 13, 2023
       Syracuse, New York

_____
Glenn T. Suddaby
U.S. District Judge